## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                    BKY Case No. 13-43877-MER

**Steven John Melander and**
**Debra Jean Melander,**                                  **Chapter 13**

                        **Debtors.**
_____

## MEMORANDUM DECISION
_____

At Minneapolis, Minnesota, March 13, 2014.

This voluntary chapter 13 case came on for evidentiary hearing before the Court on the

verified motion of TCF National Bank ("TCF"), objecting to the Debtors' claim of exemptions,

and TCF's verified objection to confirmation of the Debtors' chapter 13 plan dated August 5,

2013.  Cameron A. Lallier appeared on behalf of TCF; Maureen L. Ventura appeared for the

Debtors.  The matter is now ready for resolution.

This is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has jurisdiction

under 28 U.S.C. §§ 157(a) and 1334.  The Court makes this memorandum decision based on all

the files, records, and proceedings herein, and pursuant to FED. R. BANKR. P. 7052, made

applicable to this contested matter by FED. R. BANKR. P. 9014(c).  For the reasons set forth

below, TCF's motion objecting to the Debtors' claim of exemptions will be granted in part, and

denied in part, and TCF's objection to confirmation of the Debtors' chapter 13 plan is sustained,

such that confirmation will be denied.

## BACKGROUND

In 2006, the Debtors, Steven Melander ("Steven") and Debra Melander ("Debra"),

became indebted to TCF under a promissory note in the original principal amount of

$236,000.00; the indebtedness was secured by a second mortgage on the Debtors' former

homestead, located at 1028 241st Ave. NE, East Bethel, Minnesota 55055 (the "former

homestead"). At the time TCF obtained the second mortgage on the former homestead, it valued

the land at $503,500.00. This same property was also subject to a senior mortgage in favor of

U.S. Bank. Later, the Debtors attempted to sell the former homestead, but were unsuccessful.

Default and foreclosure proceedings by U.S. Bank followed. As a result of the foreclosure of the

first mortgage by U.S. Bank, the balance due TCF became an unsecured debt. According to the

Debtors' Schedule F, the amount now owed to TCF is $316,428.76; according to TCF, the

amount is $325,182.44. See Claim #1, claims register.

On the petition date of August 5, 2013, Steven was 70 years and Debra was 60 years old.

Steven is a retired minister who receives a monthly pension of $2,085.00. He also receives

$1,334.00 from Social Security. Debra works at the University of Minnesota as a manager. She

commutes 76 miles round trip each workday. She earns $6,768.00 each month. TCF does not

challenge the following deductions from that gross amount: $965.00 (payroll taxes), $382.00

(Social Security tax), $90.00 (Medicare), $545.00 (health insurance), $338.00 (mandatory

retirement), and $98.00 (parking), for a total of $2,418.00. In addition, Debra also claimed these

deductions: long term care insurance - $440.00, voluntary retirement contribution - $216.00,

contributions to a health care account - $92.00, and life insurance - $132.00, for a total of

$880.00.

Additionally, Steven and Debra have listed two adult daughters, ages 22 and 25,[1] as

dependents; accordingly, the Debtors calculated their disposable income based on a household

---

[1]   The Debtors' schedules list one daughter's age as 26; per Debra's testimony at trial, the daughter was in
fact 25 years old as of the petition date.

of four.  The amounts listed by the Debtors on their Schedule J expenses, as well as on the

Official Form 22C - Chapter 13 Statement of Monthly Income and Calculation of Commitment

Period and Disposable Income ("Form 22C"), are based on a household of four.  The Debtors

have claimed virtually all their assets exempt under the federal exemptions.

TCF has objected to confirmation of the Debtors' plan on the following grounds:

a.  The plan has not been filed in good faith;

b.  The plan fails to meet the best interests test;

c.  The Debtors have taken improper exemptions; and

d.  The plan does not provide that all of the Debtors' disposable income to be received during the term of the plan will be applied to make payments to unsecured creditors.

TCF has also objected to the following property being claimed exempt at the values

stated in Schedule C:[2]

a.  The Debtors' homestead, located at 19419 E Front Blvd, NE East Bethel, MN 55092;

b.  2005 Chrysler Sebring, ½ ownership interest of Steven;

c.  2003 Mercury Mountaineer, Steven and Debra;

d.  2001 Jeep Cherokee Laredo, Steven;

e.  1999 Buick Century, Steven;

f.  1998 Cadillac Deville, Steven;

g.  2000 Jet Ski;

h.  1973 12' Fishing Boat;

i.  8' Paddle boat;

j.  John Deere Lawn Tractor; and

---

[2]    The Debtors filed an amended Schedule C on September 12, 2013.

k.  Dock.

In response, the Debtors maintain that their plan is confirmable and that it was filed in

good faith. The Debtors also assert that based on the condition of the assets, and the values

ascribed to them, their exemptions are proper.

The Debtors' chapter 13 plan proposes to pay $130.00 per month for sixty months. The

total amount to be distributed to unsecured creditors is $7,020.00; this amounts to a dividend of

approximately 2.5%.  See ECF No. 2.

## DISCUSSION

### A.  Burdens of Proof

TCF, as the party objecting to the Debtors' claimed exemptions, bears the burden of

proving that the exemptions are not properly claimed.  See FED. R. BANKR. P. 4003(c) ("In any

hearing under this rule, the objecting party has the burden of proving that the exemptions are not

properly claimed.  After hearing on notice, the court shall determine the issues presented by the

objections.").  TCF also has the burden of proving that the Debtors have not applied all

disposable income to plan payments.  Education Assistance Corp. v. Zellner, 827 F.2d 1222,

1226 (8th Cir. 1987) ("Since a Chapter 13 plan that meets the requirements of section 1325(a)

would be confirmed absent the objections of the creditor, the creditor has, at minimum, 'the

initial burden of producing satisfactory evidence to support the contention that the debtor is not

applying all of his disposable income' to the plan payments." (quoting In re Fries, 68 B.R. 676,

685 (Bankr. E.D. Pa. 1986))).  It is the debtor, however, "who has the ultimate burden of proving

that a plan should be confirmed." In re Carey, 402 B.R. 327, 331 (Bankr. W.D. Mo. 2009).  See

also In re Vantiger–Witte, 2008 WL 4493426 at *3 (Bankr. N.D. Iowa Sept. 29, 2008)

("Generally, the debtor has the ultimate burden to prove a Chapter 13 plan meets all the

4

requirements for confirmation . . . ."); In re Coleman, 373 B.R. 907, 911 (Bankr. W.D. Mo.

2007) ("The burden of proof in an objection to confirmation in a Chapter 13 case is on the

objecting creditor. The debtor then has the burden of coming forward with evidence to rebut any

evidence introduced by the objecting creditor."); In re Maronde, 332 B.R. 593, 597 (Bankr. D.

Minn. 2005) ("Debtor has the burden of proving that the conditions for confirmation have been

satisfied.").  When a debtor fails to carry that ultimate burden, confirmation must be denied.

### B.     Steven's Social Security Income

In this case, Steven receives $1,334.00 from Social Security, $575.00 of which he is

contributing to the Debtors' chapter 13 plan.  TCF argues that, "[w]here the debtor voluntarily

contributes Social Security Income into the plan to make the plan feasible, he cannot then

exclude a portion of the income."  See Hr'g Br. of Objector TCF National Bank, at 6, ECF No.

22.  The Court disagrees.

The Eighth Circuit, in a chapter 7 case, recently determined that the Social Security Act

"acts as a complete bar to the forced inclusion of past and future social security proceeds in [a

chapter 7] bankruptcy estate."  In re Carpenter, 614 F.3d 930, 936 (8th Cir. 2010).  And, citing

Carpenter, the Eighth Circuit Bankruptcy Appellate Panel ("BAP") recently held that the

debtor's retention of Social Security income, in and of itself, is insufficient to find bad faith

under 11 U.S.C. § 1325(a)(3).  See Fink v. Thompson (In re Thompson), 439 B.R. 140 (B.A.P.

8th Cir. 2010).[3]  However, in a footnote, the BAP in Thompson noted that "[t]his Court does not

---

[3]     On a national level, the majority of courts find that Social Security benefits are not included in projected
disposable income, but that lack of inclusion can be considered in the totality of circumstances when
reviewed for good faith.  See, e.g., In re Cranmer, 697 F.3d 1314 (10th Cir. 2012) (finds that income from
Social Security payments need not be included in projected disposable income and that a debtor's proposal
of a chapter 13 plan that excludes Social Security income is not bad faith; totality of circumstances test is
still considered on a case-by-case basis); Baud v. Carroll, 634 F.3d 327 (6th Cir. 2011), cert. denied, 132 S.
Ct. 997 (2012) (Social Security benefits should be excluded from the calculation of projected disposable
income); In re Welsh, 465 B.R. 843 (B.A.P. 9th Cir. 2012), aff'd, 711 F.3d 1120 (9th Cir. 2013) (Social

need to decide whether Social Security income could ever be included in a debtor's projected

disposable income." 439 B.R. at 143, n.3.  So, while <u>Thompson</u> found <u>Carpenter</u> applicable,

<u>Thompson</u> appears to have left open the question of whether Social Security income could ever

be included in a debtor's projected disposable income ("PDI").

In support of its argument regarding Steven's Social Security income, TCF cites to <u>In re</u>

<u>Bottelberghe</u>, 253 B.R. 256, 261–62 (Bankr. D. Minn. 2000) (O'Brien, J.).  This case, however,

is a pre-BAPCPA[4] case, and such a proposition would likely be at odds with the spirit of

<u>Carpenter</u>.

At this point, a few conclusions become apparent: 1) the Debtors probably could not be

*forced* to include all of their Social Security income in their PDI under <u>Carpenter</u>; 2) the Debtors

are essentially in control of the amount of Social Security that they are *voluntarily* willing to

_____

Security benefits do not need to be included in calculation of projected disposable income, but the exclusion could indicate bad faith if coupled with other factors); <u>In re Ragos</u>, 466 B.R. 803 (Bankr. E.D. La. 2011), order <u>aff'd</u>, 700 F.3d 220 (5th Cir. 2012) (Chapter 13 debtors' exercise of rights accorded to them by Congress, in devoting only a small portion of Social Security benefits that they received to payment of unsecured creditors under their plan, and in retaining vast majority of these benefits while making less than a 100% distribution on general unsecured claims, did not prevent confirmation of their plan on bad faith grounds, where lesser distribution on unsecured claims was simply the mathematical consequence of Congress's decision to define "disposable income" in manner that excluded Social Security benefits, and there was no evidence that plan was proposed with intent to effectuate any purpose not permitted by the Bankruptcy Code; a chapter 13 debtor's retention of all or part of Social Security benefits, while making less than 100% distribution on general unsecured claims in proposed plan, cannot constitute bad faith in proposing the plan per se, given Congress's exclusion of Social Security benefits from debtor's "disposable income;" rather, debtor's good faith must be examined under totality of the circumstances analysis.); <u>In re Burnett</u>, 2011 WL 204907 (Bankr. N.D. N.Y. Jan. 21, 2011) (projected disposable income excludes Social Security benefits, unless the debtor voluntarily devotes that income to the plan); <u>In re Westing</u>, 2010 WL 2774829 (Bankr. D. Idaho July 13, 2010) (finding exclusion of Social Security income from plan to be properly considered in totality of circumstances showing lack of good faith).  <u>But see In re Herrmann</u>, 2011 WL 576753 (Bankr. D.S.C. Feb. 9, 2011) (although Social Security payments are excluded from current monthly income, payments must be allocated to living expenses to satisfy § 1325(a)(3) good faith requirement).  <u>See also Mort Ranta v. Gorman</u>, 721 F.3d 241 (4th Cir. 2013) (when a chapter 13 debtor proposes to use Social Security income to fund a plan, the bankruptcy court must consider that income in evaluating the plan's feasibility under § 1325(a)(6)); <u>In re Johnson</u>, 458 B.R. 745 (B.A.P. 8th Cir. 2011) (finding that debtors were bound to confirmed plan that included Social Security income regardless of recent case law, unless there was a correlated change in circumstances allowing modification).

[4]      The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 is commonly referred to as the "BAPCPA."  P.L. 109-8, 119 Stat. 23 (2005).

contribute to their plan; and 3) while <u>Thompson</u> found that the debtors' retention of their Social

Security income, in and of itself, is insufficient to find bad faith under § 1325(a)(3), it can still be

considered in a totality of the circumstances analysis, but there had better be *other* indicia of bad

faith, e.g., misrepresentations or a failure to accurately state their expenses.

The BAP in <u>Thompson</u> summed up the inquiry facing the Court, under somewhat similar

facts:

> To be confirmed, a Chapter 13 plan must be "proposed in good faith and not by
> any means forbidden by law." 11 U.S.C. § 1325(a)(3). This Court believes that
> the plain language of the Bankruptcy Code precludes the Trustee from objecting
> to the Debtors' plan based on an alleged lack of good faith.
>
> The plain language of the Bankruptcy Code specifically excludes Social Security
> income from a debtor's required payments in a Chapter 13 plan. Section
> 101(10A) defines "current monthly income." 11 U.S.C. § 101(10A). In
> subsection (B), it explains that current monthly income "excludes benefits
> received under the Social Security Act." 11 U.S.C. § 101(10A)(B). Section
> 1325(b)(2)'s definition of "disposable income" specifically incorporates the
> debtor's current monthly income. 11 U.S.C. § 1325(b)(2). In turn, section
> 1325(b)(1)(B) requires, as a condition of confirmation, that the debtor's plan
> "provides that all of the debtor's projected disposable income" during the
> specified time period be applied to make payments under the plan. 11 U.S.C. §
> 1325(b)(1)(B). Absent changes in the debtor's income or expenses that are
> known or virtually certain at the time of confirmation, the debtor's projected
> disposable income will be limited to his disposable income. <u>See</u> <u>Hamilton v.</u>
> <u>Lanning</u>, ––– U.S. ––––, 130 S.Ct. 2464, 2478, 177 L.Ed.2d 23 (2010).
>
> * * *
> Considering the Debtors' exclusion of their Social Security income from their plan
> payments as part of the good faith analysis would improperly render section 1325(b)'s
> ability to pay test meaningless. <u>See</u> <u>In re Barfknecht</u>, 378 B.R. 154, 164 (Bankr. W.D.
> Tex. 2007). In addition, the ability to pay test already addresses whether the Social
> Security income needs to be included in a debtor's plan payments. Considering the same
> issue under the good faith test would be duplicative. It simply was not bad faith for the
> Debtors to follow the requirements of the Bankruptcy Code and, in so doing, obtain a
> benefit provided therein. <u>See</u> <u>id.</u> at 165.
>
> Moreover, even if the Debtors' retention of Social Security income could contribute to a
> finding of bad faith, standing alone it could not prevent the Debtors from establishing
> good faith under section 1325(a)(3).

7

The term "good faith" is not defined in the Bankruptcy Code or its legislative history. LeMaire, 898 F.2d at 1348. Prior to the enactment of a new section 1325(b) as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 (1984), the Eighth Circuit provided a non-exclusive list of several factors to consider when determining whether the totality of the circumstances showed that good faith existed. U.S. v. Estus (In re Estus), 695 F.2d 311, 316 (8th Cir. 1982).  In Educ. Assistance Corp. v. Zellner, 827 F.2d 1222 (8th Cir. 1987), the Eighth Circuit considered the effect of the new section 1325(b)'s ability to pay test on the factors set forth in Estus. According to the Eighth Circuit, the criteria required by new section 1325(b) "subsumes most of the Estus factors." It explained that the court's "inquiry into whether the plan 'constitutes an abuse of the provisions, purpose or spirit of Chapter 13' has a more narrow focus. The bankruptcy court must look at factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." Zellner, 827 F.2d at 1226–27 (quoting Estus, 695 F.2d at 316).  In LeMaire, the Eighth Circuit explained that "Zellner preserved the traditional 'totality of circumstances' approach with respect to Estus factors not addressed by the [1984] legislative amendments." LeMaire, 898 F.2d at 1349.

* * *

A determination of bad faith by this Court based solely on the Debtors' failure to contribute all of their Social Security income in their plan would amount to a per se rule that failure to devote Social Security income to plan payments always constitutes bad faith.  Like the bankruptcy court, we decline to adopt such a rule.

In addition, section 1306 of the Bankruptcy Code defines property of the Debtors' bankruptcy estate to include all property specified in section 541 existing on the petition date and that the debtor acquires post-petition, as well as the debtor's post-petition earnings. 11 U.S.C. § 1306(a).  Recently, the Eighth Circuit ruled that past and future Social Security proceeds are excluded from the bankruptcy estate.  Carpenter v. Ries (In re Carpenter), 614 F.3d 930, 936 (8th Cir. 2010).  It would be inconsistent to say that the Debtors acted in bad faith simply by failing to devote to their plan money that was never property of their estate in the first instance.

Fink v. Thompson (In re Thompson), 439 B.R. 140, 143–44 (B.A.P. 8th Cir. 2010).

In sum, unless there is some other indicia of bad faith, i.e., undervaluation of the Debtors' vehicles or their homestead (in relation to claimed exemptions), or that the Debtors have improperly claimed expenses, TCF must accept the portion of Steven's Social Security income that he is willing to contribute *voluntarily*.

## C.    Valuations

With respect to the various property valuations, the Court now turns to the documentary evidence received, as well as the testimony of the witnesses.

On Amended Schedule A, the Debtors attribute a value of $406,172.00 to their homestead.  See Exs. M (an Anoka County "Valuation Notice" for the property), N (an online Trulia estimate of $263,000.00), and O (another online estimate from Faststart of $272,300.00). The Debtors claim an exemption in the homestead of $39,991.85 under 11 U.S.C. § 522(d)(1). TCF argues that the homestead is undervalued, but the only evidence received in support of this assertion was Ex. 1, which was a "property account summary" for the property from Anoka County, and Ex. 2, which was a Zillow report showing a "Zestimate" of $554,142.00, but which inaccurately reflected that the property had a finished basement.  In fact, Debra testified that a Zillow estimate for the property contained some inaccurate information, e.g., it reflected a finished basement, but Debra testified that their property was 70% "slab on grade," with a 30% unfinished, cinder block basement.  Debra also credibly testified that until last summer, she had been a licensed real estate agent for a number of years and had a background in real estate, and that, in her opinion, the Debtors' valuation was accurate for the property.  See FED. R. EVID. 702. The evidentiary weight of the evidence advanced by TCF in support of its argument that the Debtors undervalued their homestead is simply unreliable.  In short, TCF failed to carry its burden in refuting the Debtors' valuation of the homestead.

As to the 2005 Chrysler Sebring, the Debtors attribute a value of $500.00 to the one-half ownership interest held by Steven,[5] in which a $500.00 exemption is claimed under 11 U.S.C. §

---

[5]    The other one-half ownership interest is held by the Debtors' daughter.  See Ex. B. Steven testified that she drives this vehicle.

522(d)(5).  The Debtors offered two valuations for the vehicle.  <u>See</u> Exs. C and D.[6]  TCF offered

its separate, higher valuation.  <u>See</u> Ex. 8.  Steven testified that the vehicle had a salvage title, <u>see</u>

Ex. B, and that the vehicle had over 165,000 miles on it.  He also testified that, *inter alia*, the

vehicle has a bent frame (from an earlier accident), it burns oil, the power windows do not work,

a door does not shut properly and leaks, and the paint is faded on one side of the vehicle.

Steven's testimony regarding the condition of the vehicle supported the Debtors' valuation; TCF

failed to carry its burden in refuting the Debtors' valuation.

The Debtors value the 2003 Mercury Mountaineer, jointly owned by Steven and Debra,

at $3,000.00, with a claimed exemption for that amount under 11 U.S.C. § 522(d)(2).  <u>See</u> Exs.

G and H.  TCF offered its separate, higher valuation.  <u>See</u> Ex. 7.  Steven testified that the vehicle

has more than 240,000 miles on it; he further testified that, *inter alia*, the vehicle needs a "brake

job;" it is leaking "something;" it burns some oil; and it stalls.  Steven's testimony regarding the

condition of the vehicle was credible, and it supported the Debtors' valuation; TCF failed to

carry its burden in refuting the Debtors' valuation.

The Debtors value the 2001 Jeep Cherokee Laredo, owned by Steven, at $1,500.00, with

a claimed exemption for that amount under 11 U.S.C. § 522(d)(2).  <u>See</u> Exs. E and F.  TCF

offered its separate, higher valuation.  <u>See</u> Ex. 6.  According to Schedule B, the vehicle's

mileage was 252,000 as of the petition date.  Steven described the vehicle as a "wreck" and

further testified that, *inter alia*, the vehicle had bad "CV joints," which needed to be replaced;

the air conditioning had not worked for several years, due to a leak; and the "check engine" light

---

[6]    Steven acknowledged that he had mistakenly valued a 2004 model, and not a 2005 model, which he
actually owns.

was constantly on.  Steven's testimony regarding the condition of the vehicle supported the

Debtors' valuation; TCF failed to carry its burden in refuting the Debtors' valuation.

Steven also owns a 1999 Buick Century.  The Debtors value it at $300.00, and claim an

exemption in it in the same amount under 11 U.S.C. § 522(d)(5).  See Ex. I.  TCF offered its

separate, higher valuation.  See Ex. 4.  The vehicle's mileage is 185,000.  Steven testified that,

inter alia, the vehicle needs a "brake job;" burns oil; has a cracked windshield; has a dented

passenger side door; and has an intermittent electrical problem that drains the battery.  Steven's

testimony regarding the condition of the vehicle supported the Debtors' valuation; TCF failed to

carry its burden in refuting the Debtors' valuation.

Steven also owns a 1998 Cadillac Deville, which the Debtors value at $300.00; that value

is claimed exempt under 11 U.S.C. § 522(d)(5).  See Ex. J.  TCF offered its separate, higher

valuation.  See Ex. 3.  The vehicle's mileage is over 219,000.  Steven described the vehicle as

the "trusty rust bucket," and further testified that, among other things, the vehicle is missing

trim; has chipped paint; and leaks transmission fluid.  Steven's testimony regarding the condition

of the vehicle supported the Debtors' valuation; TCF failed to carry its burden in refuting the

Debtors' valuation.

Steven also testified regarding the Debtors' joint ownership of a 2000 Polaris "jet ski"

(model SLH), which Steven described as "totaled, well, unless you want to pay $5,000.00 to get

it fixed."  See Exs. K and L.[7]  Given the June 24, 2013 repair estimate, the Debtors value the jet

ski at $600.00; the Debtors also claimed a $600.00 exemption in it under 11 U.S.C. § 522(d)(5).

---

[7]  Steven testified that the jet ski was damaged when the Debtors' daughter was seriously injured in a
collision with it.

TCF's exhibit 5 was a valuation for a 2000 Yamaha Wave Runner GP 760, which was totally

inapposite.  Steven's testimony regarding the condition of the jet ski supported the Debtors'

valuation; TCF failed to carry its burden in refuting the Debtors' valuation.

The Debtors also jointly own a 1973 12' fishing boat, which was purchased at a farm

auction approximately eighteen years ago for $65.00.  The Debtors attribute a value of $150.00

to this boat, and claim an exemption in it in that amount under 11 U.S.C. § 522(d)(5).  Steven

credibly testified as to the value of the fishing boat.  TCF failed to carry its burden in refuting the

Debtors' valuation.

The Debtors also jointly own an 8' paddle boat, which was purchased about fifteen years

ago for $250.00.  The Debtors attribute a value of $100.00 to this boat, and claim an exemption

in the same amount in it under 11 U.S.C. § 522(d)(5).  Steven testified that the paddle boat is

damaged in several respects–as the result of a tornado.  Steven's testimony regarding the value

of the paddle boat was credible; TCF failed to carry its burden in refuting the Debtors' valuation.

Steven also testified about the John Deere lawn tractor with a 42" deck, powered by a 17

horsepower engine,[8] and a used dock, which the Debtors' valued at $400.00 and $700.00,

respectively.  The Debtors claimed both items as exempt under 11 U.S.C. § 522(d)(5).  Once

again, TCF failed to refute the Debtors' valuations.

### D.    The Debtors' Claimed Exemptions and the Best Interest of Creditors Test

Under § 1325(a)(4), a chapter 13 plan must propose payments to unsecured creditors in

an amount that is not less than they would receive in a hypothetical chapter 7 liquidation.  11

U.S.C. § 1325(a)(4); In re Breeding, 366 B.R. 21, 26 (Bankr. E.D. Ark. 2007) (reciting the §

---

[8]    TCF's Ex. 9 was a valuation for a different model tractor, one with a 38" mower deck; this valuation is
therefore inapposite.

1325(a)(4) test).  Given the above valuation determinations, TCF's objections to the claimed

exempted property under § 522(d)(1), § 522(d)(2), and § 522(d)(5), are sustained in part to the

extent that the Debtors have exceeded their § 522(d)(5) exemptions.[9]  In all other respects, TCF's

objections to the Debtors' claimed exemptions are overruled.

### E.        The Debtors' Challenged Deductions/Expenses

Steven and Debra are above-median-income debtors.  See Form 22C (ECF No. 1 and Ex.

A).  Under 11 U.S.C. § 1325(b)(3), and with respect to debtors with current monthly income

exceeding the applicable median family income, courts are required to determine the amounts

reasonably necessary to be expended in accordance with the "means test," i.e., the statutory

formula for determining whether a presumption of abuse arises in chapter 7 cases.  See 11 U.S.C.

§ 1325(b)(3) ("[a]mounts reasonably necessary to be expended under paragraph (2) shall be

determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has

current monthly income, when multiplied by 12, greater than [the applicable state median]");

Ransom v. FIA Card Servs., N.A., __U.S. __, 131 S.Ct. 716, 721–22, 178 L.Ed.2d 603 (2011)

("For a debtor whose income is above the median for his State, the means test identifies which

expenses qualify as 'amounts reasonably necessary to be expended.' The test supplants the

pre-BAPCPA practice of calculating debtors' reasonable expenses on a case-by-case basis,

which led to varying and often inconsistent determinations."); Hamilton v. Lanning, 560 U.S.

505, 510 n.2 (2010) ("The formula for above-median-income debtors is known as the 'means

test' and is reflected in a schedule (Form 22C) that a Chapter 13 debtor must file.").  Under the

means test, above-median-income debtors must use several standardized expenditure figures in

---

[9]        E.g., the Debtors conceded that Steven's § 522(d)(5) exemption exceeded the allowable amount.  See
Debtors' Response to Objection to Claim of Exemptions, ECF No. 23, p.9, ¶ 19.

lieu of their own actual monthly living expenses, see 11 U.S.C. § 707(b)(2)(A)(ii)(I).  See

Official Form 22C, lines 24–29.  The standardized figures are derived from the IRS National

Standards (for allowable living expenses and out-of-pocket health care) and IRS Local Standards

(for housing, utilities and transportation expenses).

Above-median-income debtors also are permitted to deduct their "actual monthly

expenses for the categories specified as Other Necessary Expenses issued by the Internal

Revenue Service for the area in which the debtor resides[.]"  See 11 U.S.C. § 707(b)(2)(A)(ii)(I);

Ransom, 131 S.Ct. at 727 ("For the Other Necessary Expense categories . . . the debtor may

deduct his actual expenses, no matter how high they are.").  These Other Necessary Expenses

include certain taxes, involuntary employment deductions, life insurance on the debtor, certain

court-ordered payments, certain educational expenses, childcare, unreimbursed health care, and

telecommunications services.  See Official Form 22C, lines 30–37.  "Expenditures of

above-median-income debtors for other items—including health and disability insurance,

contributions to the care of certain household or family members, protection against family

violence, home energy costs in excess of the allowance specified by IRS Local Standards, certain

limited educational expenses, additional food and clothing expenses in excess of the applicable

IRS National Standards and a certain amount of charitable contributions—are based on debtors'

own reasonably necessary needs."  Baud v. Carroll, 634 F.3d 327, 333–34 (6th Cir. 2011) (citing

11 U.S.C. § 707(b)(2)(A)(ii)(I)-(V); Official Form 22C, lines 39–45).  Finally, the "means test

and the Official Form allow certain deductions on account of ongoing payments contractually

due on secured debts and priority claims without regard to whether those payments are

14

reasonably necessary." <u>Baud v. Carroll</u>, 634 F.3d at 334 (citing 11 U.S.C. §

707(b)(2)(A)(iii)-(iv); Official Form 22C, lines 47–49).

As a preliminary matter, TCF has objected to–what it incorrectly referred to as–"a

$600.00 per month clothing expense," but the Debtors' schedules reflect that their monthly

clothing expense is $100.00 and their food expense is $600.00 per month.  <u>See</u> Ex. A, Schedule

J, lines 5, 4.  Debra's testimony corroborated these amounts.  Consequently, TCF's objection to

the Debtors' clothing expense is unfounded.

TCF further contends that the Debtors' expenses for food ($600.00) is excessive and that

the following expenses are not reasonably necessary:  transportation $525.00/month; home

maintenance $100.00/month; personal allowance-incidentals $155.00/month; and, taxes

$400.00/month.  TCF has also objected to Debra's monthly expenses for:  long- term care

insurance of $440.00; voluntary retirement contribution of $216.00; contributions to a flexible

spending health care account of $92.00; and life insurance of $132.00, for a total of $880.00.

According to Schedule J, the Debtors' total monthly household and living expenses for

their family of four is $1,215.00.  <u>See</u> Ex. A, Schedule J, lines 3, 4, 5, 6, 7, 9, & 17.a.  By way of

comparison, the IRS Allowable Living Expense National Standards – effective 4/1/2013 – for a

household of four is $1,465.00/month.  <u>See</u> Form 22C, line 24A.  The Debtors' actual living

expenses fall comfortably within the IRS National Standards.[10]

---

[10]   TCF also objects to the daughters being claimed as the Debtors' dependents, together with any expenses
claimed for them.  Debra testified that she and Steven provided their daughters with "basic room and
board," car repairs, car insurance, and that they are covered under the Debtors' medical and dental plan.
Debra further testified that the daughters pay for the fuel for the vehicles they each use, pay for their cell
phones, pay for their clothing, entertainment, and "an occasional oil change."  Debra testified that both
daughters have part-time, minimum wage jobs, and are unable to support themselves.  She also pointed out
that one daughter had a jet ski accident and suffered an injury to her left leg last summer; her condition has
worsened to the point where she needs surgery, and will require a six-month recovery period.  The other
daughter suffers from depression and anxiety; she had been released from the hospital ten days before the

TCF also objects to the Debtors' monthly transportation expenses of $525.00.  Granted, the Debtors, own, either jointly or outright,[11] five vehicles.  It should be noted, however, that the "newest" model, the 2005 Chrysler Sebring, has over 165,000 miles on it.  All of the rest of the vehicles are at least 11 years old and each has over 185,000 miles on it.  If one looks at the local standards for transportation operating costs for two vehicles, the cost is $432.00.  See Form 22C, line 27A.  Debra testified that she drives 76 miles round trip to and from her place of employment five days each week.  Based on the condition of the vehicles and the needs of the Debtors as articulated on the record, the Court finds that expenses of $525.00 per month are not unreasonable.

Debra also has $132.00 taken out of her paycheck each month for life insurance and disability insurance.  TCF argues that this figure is unreasonable, however, it does not articulate any reason why it believes that to be the case.  Both of these expenditures are allowable under the "Other Necessary Expenses" category on the means test form.  See Form 22C, line 32 ($101.00 for life insurance) and line 39.b. ($30.00 disability insurance).  Accordingly, the Court finds this expenditure to be appropriate.

TCF also objects to Debra's payroll deduction of $92.00 per month for a flexible health savings account.  She testified credibly that although the family doesn't always use the full

---

date of the trial.  Debra testified that the cost of life insurance on the daughters was a mere ten cents per pay period.  Presumably, the Debtors properly listed "four" on line 24A of the Form 22C (providing, in pertinent part, that "applicable number of persons is the number that would currently be allowed as exemptions on your federal income tax return, plus the number of any additional dependents whom you support").  This analysis assumes, for the sake of argument, that the Debtors' daughters are "dependents."  See Official Form 22C, line 24A.  Given the above expense analysis, the Court need not undertake an analysis of whether the daughters are properly considered as "dependents."  Notably, TCF appears to give "the debtors the benefit of the doubt regarding expenses for their two adult children."  See Hr'g Br. of Objector TCF National Bank, at 9 n.1, ECF No. 22.

[11]    One daughter is a joint owner of the 2005 Chrysler Sebring; she also is the primary driver of it.

amount each month, the family uses the cumulative total over the course of a year "and then

some." Additionally, the means test allows for such expenditure. <u>See</u> Form 22C, line 39.c.

There is nothing unreasonable about this expense. (Indeed, such sum is deducted from Debra's

gross income figure, thereby reducing the overall tax consequences on her full salary.)

Debra contributes $216.00 per month to a voluntary retirement account. She is now 61

years old (10 years younger than Steven), having contributed to this account since 2000, and

"has no immediate plans to retire." TCF takes issue with these monthly contributions, although

it does not articulate any specific reason why.

Courts are split on this issue. <u>See</u> <u>In re Parks</u>, 475 B.R. 703, 709 (B.A.P. 9th Cir. 2012)

(above-median-income chapter 13 debtor's voluntary post-petition retirement contributions are

not excluded from his or her disposable income; 11 U.S.C. §§ 541(a)(1), (b)(7)(A), 1325(b)(2);

regardless of whether pre-petition contributions are voluntary, "§ 541(b)(7) does not authorize

chapter 13 debtors to exclude voluntary post-petition retirement contributions in any amount for

purposes of calculating their disposable income."); <u>In re McCullers</u>, 451 B.R. 498 (Bankr. N.D.

Cal. 2011) (debtor could not exclude voluntary post-petition retirement contributions regardless

of whether the debtor was making the same pre-petition retirement contributions, although

contributions to repay a 401(k) loan were properly excluded). <u>See also</u> <u>In re Seafort</u>, 669 F.3d

662 (6th Cir. 2012) (income made available once debtors' 401(k) loan repayments were fully

repaid was "projected disposable income" properly committed to the debtors' respective chapter

13 plans for distribution to the unsecured creditors and could not be used to make voluntary

retirement contributions; 11 U.S.C. §§ 541(a)(1), (b)(7)(A), 1322(f); chapter 13 debtor's

voluntary post-petition retirement contributions are protected from and are not included in the

calculation of projected disposable income if such funds were either voluntarily contributed pre-petition or are paid towards a pre-petition 401(k) loan)). But see In re Drapeau, 485 B.R. 29 (Bankr. D. Mass. 2013) (Bankruptcy Code provision excluding from property of the estate any amount withheld by employer from wages of its employees, or any amount received from employees, as contributions to an ERISA employee benefit plan, excludes post-petition voluntary contributions to retirement plans and annuities specified therein from scope of projected disposable income available for distribution to unsecured creditors of chapter 13 debtors, as long as these contributions are made in good faith; 11 U.S.C. §§ 541(b)(7), 1325(a)(3), (b)(1)(B), (b)(2); Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C. § 1001 et seq.); In re Devilliers, 358 B.R. 849 (Bankr. E.D. La. 2007) (chapter 13 debtors' mandatory or voluntary contributions to qualified retirement plans, which were specifically excluded from "disposable income" by statute, were not subject to requirement that expenses deducted in calculating projected disposable income for plan confirmation purposes be reasonable and necessary; 11 U.S.C. §§ 541(b)(7), 1325(b)(2)). See also In re Jensen, 496 B.R. 615 (Bankr. D. Utah 2013) (even if a chapter 13 debtor may exclude voluntary retirement contributions from disposable income, he or she still must demonstrate that the retention of such contributions is in good faith).

The Court finds the rationale employed by the courts in Seafort, Drapeau, Devilliers, and Jensen instructive. Because Debra has been making these voluntary contributions for the last 14 years, there is no reason to suggest that her motivation in doing so was anything but in good faith. Moreover, TCF failed to establish an evidentiary basis sufficient to refute Debra's

18

testimony that this expense was appropriate under the circumstances.  Accordingly, the Court

allows the expense.

The Court now turns to the $400.00 per month the Debtors' claim as payment for

additional taxes.  See Ex. A, Schedule J, line 12.  Debra already has $1,437.00 per month

deducted from her paycheck.  See Ex. A, Schedule I, lines 4.a. - c., inclusive.  In contrast, the

Debtors show the amount of $2,467.00 as payment for federal and state income taxes.  See Ex.

A, Form 22C, line 30.  This amount, however, would necessarily be higher since it "captures"

the amounts paid in this category going back to the "CMI period" – current monthly income

defined as the six-month period preceding the month of filing, which in this case was February

through July 2013.  See 11 U.S.C. § 101(10A).  Steven was drawing his $45,000.00 per year

salary during at least a portion of that time frame.  He is now receiving Social Security income

of $1,334.00 per month, as well as a pension of $2,085.00 per month from his former

employment.  See Ex. A, Schedule I, lines 17 and 12, respectively.  There was no testimony

regarding any withholding amounts for tax purposes of either revenue stream.  Neither was there

any evidence of the rate at which the Debtors were being taxed.  No testimony was offered as to

whether any portion of Steven's Social Security benefits were taxable.  Because the record was

devoid of any evidence to support the Debtors' claim of an additional $400.00 per month for

state and federal income taxes, the objection of TCF as to that expense is sustained.[12]

---

[12]    For purposes of calculating a debtor's monthly expenses under the means test, a debtor's monthly expenses
specified as "Other Necessary Expenses" shall be a debtor's actual monthly expenses in effect on the date
of the order for relief.  See 11 U.S.C. § 707(b)(2)(A)(ii)(I); see also In re Washburn, 579 F.3d 934, 936 (8th
Cir. 2009) ("It is undisputed that the separate term, 'actual monthly expenses,' refers to expenses that the
debtor in fact incurs."); In re Rudnik, 435 B.R. 613, 614 (Bankr. D. Minn. 2010) ("Debtors are not entitled
to arbitrarily select tax withholding for paragraph 25 of Form B22A. Only actual tax liability can be used as
the basis for the calculation."); In re Robrock, 430 B.R. 197, 208 (Bankr. D. Minn. 2010) (income tax
liability claimed by chapter 7 debtor, based upon withholding from his wages, had to be adjusted downward
in light of evidence that debtor overwithheld and had history of regularly receiving tax refunds, and debtor

19

Finally, the Court turns to the most troublesome issue impeding the Debtors' path to an order confirming their plan – whether their monthly expense of $440.00 for long-term care is reasonable and necessary. See Ex. A, line 4.h. Perhaps it is easier to characterize this type of insurance in terms of what it is not: it is not health insurance; it is not life insurance; nor is it disability insurance. What, then, is it? Generally speaking, long-term care insurance covers out-of-pocket expenses for home health care, assisted living, adult daycare, respite care, hospice care, nursing home care, or care provided by facilities that treat patients who suffer from Alzheimer's and other dementia-related illnesses. Debra testified that she and Steven have been paying the premiums on this policy since 2000, and that she and Steven are the respective beneficiaries under the policy. There was a virtual dearth of testimony as to the necessity or the reasons why the Debtors opted to purchase such a policy. Nor was there any evidence produced that outlined the specific type of coverage provided by it. What are the exclusions? What is the deductible? These are questions that are not answerable from a review of the record.

There is no mention of "long-term care insurance" in the category of "other necessary expenses" set forth in § 707(b)(2)(A)(ii)(I). Similarly, there is no reference to this type of expense deduction in Official Form 22C. There is also a decided paucity of case law on this

---

would be allowed a deduction only in reduced amount when performing "means test" calculation, for purpose of determining whether his Chapter 7 case was presumptively subject to being dismissed); In re Balcerowski, 353 B.R. 581, 587 (Bankr. E.D. Wis. 2006) (to calculate his "disposable income," for purpose of determining whether proposed plan satisfied "projected disposable income" requirement, above-median-income Chapter 13 debtor had to subtract from his current monthly income monthly tax expense in amount equal not to taxes withheld each month from debtor's paycheck, but to debtor's best estimate of what his average monthly tax expense would be; "It follows, then, that the amount a taxpayer chooses to withhold from his paycheck is not necessarily the actual tax expense he will incur. In fact, the taxpayer gets back from the taxing authorities any amount he has over-withheld in the form of a tax refund. The amount that the taxpayer gets back is not, therefore, an amount 'reasonably necessary to be expended.'"). Here, and notwithstanding the reference on the Debtors' Schedule J to "[t]axes not withheld" in the amount of $400.00, the amount of the Debtors' actual (or even estimated) taxes was not established.

subject.  In the case of In re Rajender, 2007 WL 2345018 (Bankr. E.D. Cal. Aug. 7, 2007), the

court mentioned long-term care insurance by referring to the version of the Form 22C in effect at

the time, noting that "[o]ther necessary expenses may include state and federal income, self-

employment, social security, and Medicare taxes; dental, vision, **long-term care**, and life

insurance, . . . and business expenses.  See Lines 30-37 of Official Form 22C."  Id. at *2

(emphasis added).[13]  The court then denied confirmation of the debtor's plan, not on the basis of

any long-term care expense (there was none), but because the debtor could not justify his

excessive expenses for food, utilities, and taxes.  Id. at *3.

The Court also came across a case that discussed the propriety of allowing debtors a

deduction for long-term health care, albeit in the context of a challenge by the United States

Trustee ("UST") under § 707(b)(1) and (3) – the totality of circumstances in a chapter 7 context.

The court in In re Roberts, 2011 WL 2118857 (Bankr. D. Conn. May 25, 2011), denied the

motion to dismiss.  The UST challenged the debtors' expenditure of $815.00 per month for

various forms of insurance, including $111.00 for long-term care insurance.  The court accepted

the debtors' expense figures because "[t]he UST recognized that the debtors carried those

insurance policies because Mr. Roberts is an insurance salesman who believes these policies are

'appropriate and necessary to take care of his family' [but] offered no evidence to contradict the

reasonableness of those expenses."  Id. at *5 (citation omitted).[14]

---

[13]    It is not clear why the court makes this statement, as no version of Official Form 22C has ever referenced
"long-term care" as an appropriate "other necessary expense."  See Official Form 22C, versions (10/06),
(12/10), and (04/13).

[14]    The Court recognizes that Rajender and Roberts are not "on all fours" with the circumstances of this case
and that the cases are factually distinguishable from the record made here.  But, while the two decisions are
unpublished, they do appear to evidence the relative scarcity of case law on this subject – in the context of
chapter 13.

It is not entirely clear why Mr. and Mrs. Melander have purchased long-term care insurance. Debra testified on cross-examination that the expense was both "necessary and reasonable," but did not elaborate. The record also reflects that the Melanders have been paying the premiums since 2000, and that both Steven and Debra are the respective beneficiaries, but there are no other details upon which the Court can justifiably rely in allowing the deduction of $440.00 per month for such insurance policy. For that reason, and since this type of expense is not listed in either § 707(b)(2)(A)(ii)(I) or § 707(b)(2)(A)(ii)(II) as "other necessary expenses," the Debtors must contribute that amount toward the calculation of PDI.

Here, the Debtors propose to pay only $130.00 per month. The plan does not provide for payment in full of all unsecured claims. TCF is the holder of an allowed unsecured claim. It objected to the plan as proposed by the Debtors. The Debtors' plan does not provide for payment of all the Debtors' PDI for the plan's applicable commitment period (here, five years). Accordingly, under § 1325(b)(1)(B), TCF's objection to confirmation of the plan is sustained.

Moreover, "[i]n the Eighth Circuit, [the] 'good faith' analysis under § 1325(a)(3) is focused on 'whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13.'" In re Schachtele, 343 B.R. 661, 668 (B.A.P. 8th Cir. 2006) (quoting In re LeMaire, 898 F.2d 1346, 1348 (8th Cir. 1990) (citing In re Estus, 695 F.2d 311, 316 (8th Cir. 1982))). Here, while the Court acknowledges some of the Debtors' testimony regarding their efforts to trim their budget, the spirit of chapter 13 would not be served were the Court to adopt the Debtors' proposed plan. As such, denial of confirmation must be the outcome here.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.     TCF's objections to the Debtors' claimed exempted property under § 522(d)(1), §

522(d)(2), and § 522(d)(5), are sustained in part to the extent that the Debtors

have exceeded their § 522(d)(5) exemptions. In all other respects, TCF's

objections to the Debtors' claimed exemptions are overruled.

2.     TCF's objection to confirmation is sustained and confirmation of the Debtors'

chapter 13 plan dated August 5, 2013 is denied.


*/e/ Michael E. Ridgway*

Michael E. Ridgway
United States Bankruptcy Judge


NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *03/13/2014*
Lori Vosejpka, Clerk, by SS